IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Kimberly C. Roberson, ) | C/A No. 0:15-3486-TMC-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Kimberly C. Roberson, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:



(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 404.1520(h).



**ADMINISTRATIVE PROCEEDINGS**

In January 2012, Roberson applied for DIB, alleging disability beginning June 17, 2011. Roberson's application was denied initially and upon reconsideration, and she requested a hearing before an ALJ. A hearing was held on December 19, 2013, at which Roberson, who was represented by Hal W. Roach, Esquire, appeared and testified. The ALJ issued a decision on March 30, 2014 finding that Roberson was not disabled. (Tr. 11-48.)

Roberson was born in 1959 and was fifty-one years old on her disability onset date. (Tr. 155.) She has a high school education and past relevant work experience as an accounting clerk and as an office manager/bookkeeper. (Tr. 198.) Roberson alleged disability due to anxiety, depression, panic attacks, diabetes, neuropathy, irritable bowel syndrome, ulcerative colitis, gastroparesis, fibromyalgia, back trouble, acid reflux, ulcers, nausea, and vomiting. (Tr. 197.)

In applying the five-step sequential process, the ALJ found that Roberson had not engaged in substantial gainful activity since June 17, 2011—her alleged onset date. The ALJ also determined that Roberson's degenerative disc disease of the lumbar spine; diabetes mellitus; obesity; and gastrointestinal conditions, including IBS and ulcerative colitis, were severe impairments. However, the ALJ found that Roberson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Roberson retained the residual functional capacity to

> perform medium work as defined in 20 CFR 404.1567(c) except the claimant could lift up to 50 pounds occasionally and 25 pounds frequently; the claimant could sit 6/8 hours, stand 6/8 hours, and walk 6/8 hours in an eight-hour workday; the claimant could climb ramps and stairs, balance, and crouch on a frequent basis; the claimant



> could stoop and climb ladders, ropes, and stairs on an occasional basis; the claimant should avoid concentrated exposure to temperature extremes, wetness, and hazards.

(Tr. 21.) The ALJ found that Roberson was cable of performing past relevant work as a bookkeeper and as an office clerk, as this work did not require the performance of work-related activities precluded by Roberson's residual functional capacity. Therefore, the ALJ found that Roberson was not disabled from June 17, 2011—her alleged onset date—through the date of his decision.

The Appeals Council denied Roberson's request for review on July 6, 2015, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.



**ISSUES**

Roberson raises the following issues for this judicial review:

I.  Did the Defendant commit reversible error by failing to properly consider the treating physician evidence?  []

II.  Did the Defendant commit reversible error by failing to find that Ms. Roberson was disabled due to fibromyalgia under SSR 12-2p?  []

III.  Did the Defendant commit reversible error by mischaracterizing and misstating the record in significant aspects?  []

IV.  Did the Defendant commit reversible error by failing to make a proper credibility finding?  []

(Pl.'s Br., ECF No. 10.)

**DISCUSSION**

**A.    Treating Physician**

Roberson argues that the ALJ failed to properly evaluate the opinions from her treating physicians, Dr. Bala Krishniah (an internist) and Dr. Michael Rickoff (a gastroenterologist). Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. § 404.1527(c)(2).  However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*).  Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list:  (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."  Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R.



§ 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. (quoting Craig, 76 F.3d at 590).

> Additionally, SSR 96-2p provides that a finding that
>
> a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. at *5.

With regard to Dr. Krishniah, the record reveals that he completed four questionnaires indicating his opinions pertaining to Roberson's limitations—an untitled mental questionnaire (Tr. 316), a "Physical Medical Source Statement" (Tr. 347-50), a "Medical Source Statement of Ability to Do Work Related Activities (Mental)" (Tr. 389-91), and a "Fibromyalgia Medical Source

*PJG*

Statement" (Tr. 392-95). Although unclear, it appears that Roberson is challenging the evaluation and weighing of all of Dr. Krishniah's opinions.

The ALJ summarized the details from these opinions in his decision. Specifically, the ALJ observed that Dr. Krishniah indicated in February 2012 that Roberson "had 'obvious' work-related limitations of function secondary to mental conditions, such as depression and anxiety" and that Roberson "had been prescribed several medications for mental conditions over the years." (Tr. 30.) The ALJ found that Dr. Krishniah indicated in his October 2012 "Physical Medical Source Statement" that he had treated Roberson every four to twelve weeks for ten years. The ALJ found that "the lengthy treatment history supports his statements somewhat." (Id.) The ALJ stated that "[a]t this time, Dr. Krishniah indicated that [Roberson's] diagnoses included anxiety, depression, panic attacks, fibromyalgia, back pain, peripheral neuropathy, diabetes, IBS, and ulcerative colitis" and her "symptoms included anxiety, depression, fatigue, poor focus/concentration, and generalized pain." (Id.) The ALJ observed that Dr. Krishniah indicated that Roberson experienced a generalized pain level of 8/10 and panic attacks daily. Further, the ALJ found that Dr. Krishniah "remarked that physical exertion, stress, and social situations worsened [Roberson's] symptoms," "explained that the clinical findings and objective signs underlying his statements included generalized tenderness over the lumbar spine, paraspinal muscles, and thighs/shins/calves," and "reported that [Roberson] took pain medications and Xanax, and the pain and anxiolytic medications caused grogginess, fatigue, dizziness, and impaired concentration." (Id.) The ALJ stated that Dr. Krishniah expected Roberson's impairments to last at least twelve months and that "[e]motional factors contributed to the severity of [Roberson's] symptoms and functional limitations, including depression, anxiety, and

psychological factors." (Id.)  The ALJ found that Dr. Krishniah indicated that Roberson "had chronic fatigue related to anxiety, depression, and chronic pain"; "had chronic diarrhea related [to] irritable bowel syndrome and ulcerative colitis"; and "had poor focus and concentration related to psychiatric disorders and side effects of narcotics and anxiolytics." (Id.)  Finally, regarding Roberson's functional capacity in a competitive work situation, the ALJ found that Dr. Krishniah indicated that Roberson

> was severely limited, including walking 50 feet without rest; sitting 1 hour at one time; standing 1 hour at one time; stand/walk less than 2 hours total in an eight-hour workday; sit about 4 hours in an eight-hour workday; needing a job that permitted the shifting of positions at will because the claimant was unable to sit or stand for prolonged periods; needing a job that allowed periods of walking around during the workday, although the claimant could do very minimal walking; needing to take unscheduled breaks during the workday about every 1 to 2 hours for a break of 10 to 15 minutes each because of muscle weakness, chronic fatigue, pain, paresthesias, numbness, and adverse effects of medications, such as drowsiness/grogginess; needing to elevate the legs at head level, including 50% of the time at a sedentary job because of neuropathy and lower extremity swelling; never lifting more 20 or 50 pounds; rarely lifting 10 pounds and occasionally less than 10 pounds; occasionally twist and climb stairs, rarely stoop, and never crouch and climb ladders; use of the hands and fingers 30% of the time for grasping and fine manipulations and use of the arms 20% of the time for reaching in front of the body and 10% of the time for overhead reaching because of carpal tunnel and neuropathy; being off task 25% of the time or more because the symptoms would be severe enough to interfere with attention and concentration; being incapable of tolerating even "low stress" work because of anxiety, depression, and frequent panic attacks; and being absent from work more than 4 days per month, for example (11F).

(Tr. 30-31.)

The ALJ continued by discussing Dr. Krishniah's June 2013 Medical Source Statement of Ability To Do Work Related Activities (Mental), observing that

> Dr. Krishniah indicated that the claimant's ability to understand, remember, and carry[ ]out instructions was impaired by chronic anxiety, irritable bowel syndrome, chronic pain, multiple medications, and fibromyalgia. Dr. Krishniah added that chronic anxiety and irritable bowel syndrome had impaired the claimant's ability to



>work for a long time, including her capacity to interact appropriately with supervisors, coworkers, and public, as well as to respond appropriately to usual work situations and changes in routine work setting. Dr. Krishniah remarked that chronic abdominal pain, chronic headaches, back pain, and pain medications impaired the claimant's capacity to function. Dr. Krishniah stated that the claimant had tenderness over the back, obesity, and limited range of motion of the back due to pain. Dr. Krishniah again explained that he had treated the claimant for more than 10 years.

(Tr. 31.) Finally, the ALJ summarized the October 2013 Fibromyalgia Source Statement completed by Dr. Krishniah, which again indicated that he had treated Roberson for more than 10 years. The ALJ observed that the statement indicated that Roberson "met the criteria of the 1990 American College of Rheumatology Criteria for the classification of fibromyalgia" and that "[o]ther disorders that could cause repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." (Id.) Further, the ALJ found that the statement indicated that Roberson

>had pain in the lumbosacral spine, cervical spine, thoracic spine, shoulders, arms, and legs. The pain had been chronic and persistent. Precipitating factors included changing weather, fatigue, hormone changes, stress, and sleep problems. Emotional factors contributed to the severity of the claimant's symptoms and functional limitations. The claimant had tender points in the occiput, trapezius, supraspinatus, gluteal, and greater trochanter areas. The claimant was on multiple medications for pain and anxiety that could affect her ability to work. The fibromyalgia had lasted or be expected to last for at least 12 months. Because of chronic pain, medications, and chronic fatigue syndrome, the claimant lacked the stamina to work an easy job 8 hours per day, five days per week. IBS, fibromyalgia, and chronic fatigue syndrome associated with anxiety limited the claimant's capacity to work. In terms of symptoms, signs, and associated conditions, Dr. Krishniah indicated that the claimant had history of widespread pain longer than 3 months, 11 of 18 specific tender points, IBS, muscle pain, frequent severe headaches, fatigue, depression, anxiety disorder, abdominal pain/cramps, nausea, shortness of breath, insomnia, nervousness, chest pain, diarrhea, heartburn, irritable bladder syndrome, GERD, chronic fatigue syndrome, panic attacks, fatty liver, and fluctuating liver function tests. The claimant also had lumbral radiculopathy with chronic low back pain and abdominal weight gain.

(Tr. 31-32.)



In weighing this evidence, the ALJ specifically addressed the relevant factors. He observed that Dr. Krishniah was a treating physician, involving multiple office visits and examinations extending over at least two and half years. The ALJ further observed that "Dr. Krishniah has offered several statements on the claimant's behalf that largely support her allegations." (Tr. 32.) Nonetheless, the ALJ found that "in many respects, Dr. Krishniah's statements underestimate the claimant's level of functioning" and gave his opinions limited weight. (Id.)

The ALJ continued, specifically observing that Dr. Krishniah is an internist, and therefore, "not necessarily an expert in the evaluation, diagnosis, and treatment of any of the claimant's alleged impairments, including the gastrointestinal problems, mental conditions, diabetic conditions, fibromyalgia, or back problems," as opposed to a gastroenterologist, psychiatrist/psychologist, endocrinologist, rheumatologist, orthopedist, or neurologist. The ALJ also observed that Dr. Krishniah rarely listed a diagnosis of fibromyalgia in the "Assessments" section of his treatment notes and instead generally listed a diagnosis of "unspecified fascial myalgia and myositis." (Id.) The ALJ found that Roberson sought relatively little treatment with a mental health professional. With regard to Dr. Krishniah's February 2012 opinion that Roberson had "obvious" work-related limitations of function secondary to mental conditions, the ALJ observed that "obvious" limitations fell in the middle of the severity continuum used on the statement and that Dr. Krishniah indicated that Roberson "had intact orientation, intact thought process, appropriate thought content, normal mood/affect, good attention/concentration, and good memory"; that medications helped Roberson's condition some; and that Roberson had largely failed to follow his recommendation for her to seek mental health treatment. (Tr. 32.)



The ALJ also found that the first part of Dr. Krishniah's June 2013 opinion did not contain an opinion as to Roberson's residual functional capacity. Further, the ALJ observed that Dr. Krishniah did not characterize any limitation as more than "moderate."

The ALJ also found that Dr. Krishniah's opinions were not supported by Roberson's subjective remarks and daily activities; Roberson's hospital records; some of Dr. Rickoff's records; and Dr. Krishniah's own treatment notes, including his examinations and diagnostic tests. The ALJ then proceeded to support these findings by discussing the details of Roberson's medical records, including her reports, examination results, and test results from January 2011 through November 2013. (Tr. 33-37.)

The ALJ also addressed Dr. Rickoff's opinion evidence. The ALJ found that "overall, the seeking of treatment with a specialist supports the claimant's allegations somewhat." (Tr. 26.) However, the ALJ also found as follows:

> In general, I give greater weight to the treatment notes of Dr. Rickoff, the gastroenterological specialist rather than internist, Dr. Krishniah, regarding treatment of the gastrointestinal problems, because of his specialty in the evaluation, diagnosis, and treatment of conditions of the digestive tract. The records from the gastroenterologist provide the best illustration of the claimant's level of functioning in light of the gastrointestinal problems.

(Id.) The ALJ then discussed Dr. Rickoff's opinion evidence, which consisted of a November 2012 medical source statement, and found that it generally supported many of Roberson's allegations. Specifically, the ALJ stated,

> For instance, Dr. Rickoff indicated such limitations as sit 1 hour at one time; stand 20 minutes at one time; sit, stand, and walk less than 2 hours total in an 8-hour workday; opportunity to shift positions between sitting, standing, and walking; unscheduled breaks during the workday, including frequent bathroom breaks when having a flare-up; never lift more than 10 pounds and rarely lift 10 pounds or less; rarely twist, stoop, crouch, climb stairs, and climb ladders; be off task 25% of a

Page 11 of 20



> workday during flare-up of symptoms; and absent from work about 2 days per month. Dr. Rickoff identified IBS and Colitis as the diagnoses underpinning his opinions and determinations.

(Tr. 27.)

In weighing this evidence, the ALJ again specifically addressed the relevant factors. The ALJ observed that Dr. Rickoff is a gastroenterology specialist, has diagnosed Roberson with gastrointestinal conditions that he has treated with medications and conservative modalities; and has a treatment relationship spanning at least two and half years that includes multiple visits, examinations, and tests. However, in giving Dr. Rickoff's opinion limited weight, the ALJ found that Dr. Rickoff's statement underestimated Roberson's level of functioning and that Dr. Rickoff's own treatment notes (including examinations and tests), Roberson's subjective remarks, Roberson's hospital records, and some of Dr. Krishniah's records did not support Dr. Rickoff's statements fully. The ALJ then proceeded to discuss Roberson's gastrointestinal treatment records, specifically identifying records that supported or contradicted the opinion evidence or Roberson's subjective reports. (Tr. 27-30.)

In arguing that the ALJ erred in evaluating these opinions, Roberson initially argues that the ALJ erred in giving more weight to the opinions of the state agency records reviewers than to the opinions of Roberson's treating doctors. Specifically, Roberson argues that the reviewers failed to perform a proper assessment, pointing out that the reviewers' opinions contained identical scrivener's errors, and that the reviewers did not possess a complete case record when rendering their opinions. However, the court finds that Roberson has failed to demonstrate any reversible error. Such opinions can constitute substantial evidence in support of an ALJ's decision over the opinion of an examining physician so long as the opinions from the non-examining physicians are consistent



with the record as a whole. See Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986); Stanley v. Barnhart, 116 F. App'x 427, 429 (4th Cir. 2004) (disagreeing with the argument that the ALJ improperly gave more weight to residual functional capacity assessments of non-examining state agency physicians over those of examining physicians and finding that the ALJ properly considered evidence provided by those physicians in context of other medical and vocational evidence); see also 20 C.F.R. § 404.1527(e)(2)(i) ("State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified . . . [and] are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider [their] findings and opinions as opinion evidence"). The court has carefully considered Roberson's arguments; however, on this record, Roberson has failed to demonstrate that her allegations render the ALJ's weighing of these opinions unsupported by substantial evidence or controlled by an error of law. See, e.g., Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2012) ("[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."); see also Geiger v. Astrue, No. 2:11CV00055, 2013 WL 317564 (W.D. Va. Jan. 27, 2013) ("The simple fact that [] opinions [with different outcomes] came later in time than the state agency opinions does not mean that they should be accorded greater weight.").

Roberson also argues in a conclusory fashion that Dr. Krishniah and Dr. Rickoff are her treating physicians, that there is no persuasive contradictory evidence, that the ALJ failed to consider Roberson's continuous and consistent reports of pain and psychological overlay, and that the record as a whole shows that she suffers from numerous conditions of which the ALJ failed to consider the



combined effects that would prevent her from performing even sedentary work. Roberson further argues that the ALJ incorrectly considered that Dr. Krishniah is an internist and therefore not an expert in the evaluation, diagnosis, or treatment of Roberson's impairments. Roberson mentions that the ALJ could have ordered a consultative examination if he doubted Dr. Krishniah's opinion. Finally, Roberson generally argues that the ALJ failed to adequately evaluate Dr. Rickoff's opinion, asserting that Roberson has gastrointestinal problems that are unpredictable and when they unexpectedly flare up she is substantially unable to function.

The court has carefully considered Roberson's arguments; however, the court observes that the majority of Roberson's arguments are conclusory and lack any specific support. Notwithstanding Roberson's lack of specificity, the court finds that the ALJ gave appropriate reasons to discount these opinions, and Roberson is essentially asking the court to reweigh the evidence. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). Contrary to Roberson's arguments, the ALJ's decision reflects that he properly considered the record as a whole and discussed it in great detail. Furthermore, the court observes that, contrary to any argument by Roberson, the decision explicitly reflects that the ALJ applied the relevant factors to the opinions at issue.

In sum, upon review of the ALJ's decision and the record, the court finds that Roberson has failed to demonstrate that the ALJ's decision to afford little weight to the opinions at issue is unsupported by substantial evidence or based on an incorrect application of the law. See 20 C.F.R. § 404.1527(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded

Page 14 of 20



significantly less weight") (internal quotation marks and citation omitted); Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) ("An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' . . . or has failed to give a sufficient reason for the weight afforded a particular opinion[.]") (internal citations omitted).  The decision reflects that the ALJ weighed these opinions and reasonably found that the medical findings and observations in the record did not support them.  To the extent that Roberson may be able to point to select medical records that arguably support the opinions, she has failed to demonstrate that the ALJ's findings are unsupported by substantial evidence.  In fact, it is clear that the ALJ, as part of his duties in weighing the evidence, properly relied on medical records and treatment notes in determining that the opinions were unsupported.  See Craig, 76 F.3d at 589; Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).  For all of these reasons, the court finds that Roberson has not shown that the ALJ's decision with regard to the opinion evidence at issue was unsupported by substantial evidence or reached through application of an incorrect legal standard.

**B.     SSR 12-2p**

Roberson's next argument is related to her previous one.  Specifically, Roberson appears to argue that the ALJ failed to comply with SSR 12-2p because he failed to explain why she did not meet the definition of disability for fibromyalgia.  In support of this argument, Roberson relies on Dr. Krishniah's fibromyalgia opinion.  However, as discussed above, Roberson has failed to demonstrate that the ALJ erred in discounting this opinion evidence.  Moreover, the ALJ's decision reveals that he specifically considered this ruling in evaluating Roberson's disability application.



(See Tr. 15-16.) Therefore, the court finds that Roberson has failed to identify any reversible error by the ALJ.

**C.     Credibility**

Roberson's next two arguments appear to both be directed at the ALJ's evaluation of her credibility and her testimony; therefore, the court will address these arguments together. With regard to subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594.  The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation omitted).  During the second step, the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects [her] ability to work." Id.  In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added).  "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595.  A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective



evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i) Your daily activities;
(ii) The location, duration, frequency, and intensity of your pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

Roberson appears to argue that the ALJ questioned Roberson in a manner as to reveal a "gotcha moment" which would support denying her claim; however, there court finds there is no evidence to support this conclusory assertion. Roberson also argues that the ALJ erred in mischaracterizing and misstating some of Roberson's daily activities in denying her claim. However, even if the court were to agree with Roberson on her challenges, the court finds that Roberson has failed to demonstrate that the ALJ's credibility analysis or decision as a whole is unsupported by substantial evidence or controlled by an error of law, as these were but a few issues among numerous reasons that the ALJ offered in the extensive discussion of the record in evaluating Roberson's credibility. Moreover, the ALJ's decision specifically reflects that he considered and evaluated the relevant factors in weighing Roberson's credibility, see 20 C.F.R. § 404.1529(c)(3),

Page 17 of 20



and as stated above, it is the ALJ's duty to weigh credibility. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]").

In challenging the ALJ's credibility analysis, Roberson indicates that credibility is not truly an issue, summarily arguing that the "great weight of the objective evidence of her medical conditions show[s] that she is disabled under the Social Security Act." (Pl.'s Br. at 16, ECF No. 10 at 16.) However, Roberson fails to direct the court to any evidence in support of this argument; instead, she merely recites her impairments. The court further observes that the ALJ's decision includes a lengthy discussion revealing that he considered numerous inconsistencies—both medical and non-medical—in the record.

Thus, upon review of the record as a whole and the parties' briefs, the court finds that Roberson has failed to demonstrate that the ALJ's determination that Roberson was not entirely credible is unsupported or controlled by an error of law. See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (noting that the absence of ongoing medical treatment can discredit a claimant's allegations); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

## RECOMMENDATION

For the foregoing reasons, the court finds that Roberson has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

September 6, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).